E-FILED
Tuesday, 24 May, 2016  03:26:03 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JURL R. SOUTHERLAND, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 15-3117 |
| | ) | |
| SPENCER BEDWELL and JESSE | ) | |
| FRAKES, both in their Individual | ) | |
| Capacities, and SCHUYLER | ) | |
| COUNTY, ILLINOIS, and OFFICE | ) | |
| OF THE SHERIFF OF SCHUYLER | ) | |
| COUNTY, ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

RICHARD MILLS, U.S. District Judge:

Plaintiff Jurl R. Southerland filed an eighteen-count Complaint,
asserting federal and state claims against Defendants Schuyler County,
Illinois, Office of Sheriff of Schuyler County, Schuyler County Sheriff's
Deputy Spencer Bedwell and Schuyler County Auxiliary Officer Jesse
Frakes.

Pending before the Court is the Defendants' Motion to Dismiss the
Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure.

## I. FACTUAL ALLEGATIONS[1]

A. Background

Plaintiff Jurl R. Southerland alleges that in or around March of 2013, he began informing people in the community that he was going to run for Sheriff of Schuyler County, Illinois. He sought to address what he believed was corruption and incompetency within the sheriff's office.

Prior to March 17, 2014, Donnie Schieferdecker, then-Sheriff of Schuyler County, announced he would not seek another term in the November election. Kevin Murray had informed members of the community he would be running for Sheriff of Schuyler County. Murray was a co-worker and friend of Defendants Spencer Bedwell and Jesse Frakes. Bedwell was a sheriff's deputy and Frakes was a dispatch officer acting as an auxiliary officer. On or about March 17, 2014, Bedwell and Frakes (collectively, "the Officers") knew that the Plaintiff was running for

---

[1]These facts are taken from the Plaintiff's Complaint. Because the case is before the Court on a Motion to Dismiss, the Court assumes at this stage that the Plaintiff's factual allegations are true.

Sheriff of Schuyler County.

The Officers did not want the Plaintiff to be elected as Sheriff of Schuyler County. Prior to March 17, 2014, the Plaintiff told Bedwell that he would be fired if the Plaintiff were to be elected sheriff. The primary election was scheduled to take place on March 18, 2014.

On March 17, 2014, at 2:53 a.m., the Officers drove their Schuyler County Sheriff's Office squad car to the Plaintiff's property in rural Schuyler County. At approximately 3:12 a.m., Bedwell stopped his squad car near the Plaintiff's property. Bedwell announced on his police radio that he was ". . . going to be out along the highway in front of the Southerland residence . . .". He did not announce any reason that he was going to be out along the highway in front of the Plaintiff's residence.

The officers were stopped near the Plaintiff's property long enough to cause the Plaintiff's dogs to wake up and begin barking. The barking dogs woke up Donella Southerland, the Plaintiff's wife. After awakening the Plaintiff looked out his window and saw a vehicle, which he did not recognize as a Schuyler County Sheriff's Office squad car, at the eastern

edge of his property.  Donella Southerland looked out another window of their home and saw the vehicle traveling west past their property and then realized that the vehicle was going to turn around and return, heading back towards their home.  She also did not recognize it as a squad car and informed the Plaintiff that the vehicle was returning.

The Plaintiff then exited his home to investigate whether people were prowling around his property.  Before going outside, the Plaintiff put on his robe and picked up a rifle.  As the Plaintiff was heading toward the end of the driveway, he observed the vehicle drive past his home.  As the officers were driving slowly by the home, one or both of them saw the Plaintiff. Bedwell stopped the squad car and backed up toward the Plaintiff, eventually coming to stop a few feet away from him.  The Plaintiff and Bedwell spoke to each other.  Bedwell then drove away from the Plaintiff's home.  At no time during this incident did the Plaintiff point a firearm at either officer.

As Bedwell drove his Schuyler County Sheriff's Office squad car away from the vicinity of the Plaintiff's residence, he used his police radio to

inform dispatch personnel, "I'm going to be leaving the area. Jurl Southerland. He's got a gun. I'm not sure what the problem is. Uh. But he is very angry." At the time, Bedwell did not claim that Plaintiff had pointed a gun at him or that Plaintiff had committed any crime at all.

At 3:18 a.m. on March 17, 2014 after leaving the Southerland property, Spencer Bedwell called and to spoke to Deputy Kevin Murray at 3:43 a.m. Either before talking with candidate Kevin Murray or, in the alternative, while talking with Murray or soon after talking with him, the officers conspired to both falsely claim that Plaintiff had pointed a firearm at one or both of them.

On or about March 17, 2014, Spencer Bedwell made statements to the state's attorney regarding the events that had occurred at the Plaintiff's home. Bedwell wrote a police report regarding those events and caused that report to be delivered to the Schuyler County State's Attorney. In both the oral statements and written police report provided to the Schuyler County State's Attorney, Bedwell falsely alleged that: (1) Jurl Southerland had pointed a gun at him and at Jesse Frakes; and (2) Jurl Southerland said he

5

would shoot the next car that stopped near his house.  At the time he provided this information, Bedwell was aware that it was false.

On or about March 17, 2014, Jesse Frakes made statements to the state's attorney regarding the events that had occurred at the Plaintiff's home.  Frakes wrote a police report regarding the events that had occurred and caused that report to be delivered to the Schuyler County State's Attorney.

On an unknown date, Frakes is believed to have written a second police report regarding the events that had occurred at the Plaintiff's home or he otherwise altered his first report and caused that report to be delivered to the state's attorney.  In both the oral statements and written police report or reports provided to the Schuyler County State's Attorney, Frakes falsely alleged that: (1) Jurl Southerland had pointed a gun at him and at Spencer Bedwell; and (2) Jurl Southerland stated he would shoot the next car that stopped near his house.  At the time he provided this information, Frakes was aware that the information was false.

Additionally, Bedwell and Frakes each knew that the other officer's

written and oral statements claiming that Plaintiff had pointed a gun and would shoot the next car that stopped near his house were false.

Spencer Bedwell's written report delivered to the state's attorney and the verbal statements made to the state's attorney falsely alleged that Plaintiff had committed the crimes of aggravated unlawful use of a weapon and other offenses.  Bedwell made and reported the false allegations in order to cause the state's attorney to seek an arrest warrant for the Plaintiff.

Spencer Bedwell and Jesse Frakes caused the state's attorney to seek an arrest warrant for the Plaintiff with the purpose and intent of burdening, interfering with and/or preventing the Plaintiff from running for office, expressing his political views, winning the election to the office of Sheriff of Schuyler County and representing the interests of and advancing the political ideas of a particular set of voters.  The officers knew there was no lawful basis for an arrest warrant to be issued for the Plaintiff, but allowed the arrest warrant to be issued.

B. Criminal charges and pretrial proceedings

The Plaintiff was charged by information with the following criminal

7

offenses: (1) aggravated assault, in violation of 720 ILCS 5/12-2(a), a class A misdemeanor; (2) aggravated assault, in violation of 720 ILCS 5/12-2(a) & (c)(6)(I), a class 4 felony; (3) aggravated assault, in violation of 720 ILCS 5/12-2(a) & (c)(6)(ii), a class 4 felony; (4) aggravated assault, in violation of 720 ILCS 5/12-2(a) & (c)(6)(iii), a class 4 felony; (5) aggravated unlawful use of a weapon, in violation of 720 ILCS 5/24-1.6(a)(2)(3)(A), a class 4 felony; and (6) reckless conduct, in violation of 720 ILCS 5/12-5(A)(1), a class 4 felony.  Counts 2, 3 and 4 were non-probationable under 730 ILCS 5/5-5-3(c)(2)(DD), such that if the Plaintiff was convicted, he faced a mandatory minimum sentence of not less than one year in the custody of the Illinois Department of Corrections and up to three years in the custody of the Illinois Department of Corrections.

On or about March 17, 2014, Spencer Bedwell signed a complaint for search warrant and caused it to be submitted to a judge.  The allegations in the complaint for search warrant falsely claimed that Plaintiff had committed one or more crimes.  It contained a list of the "items or materials" that he wanted permission to "seize."  In paragraph C of the

complaint, Bedwell requested permission from the judge to seize the following:

> Any and all weapons or firearms, including but not limited to handguns, rifles, shotguns, spring-guns, sawed-off shotguns, or sawed-off rifles, ammunition, which may have been used in commission of the offense of aggravated assault, aggravated unlawful use of a weapon, and reckless conduct, and any other items which may have been used in the commission of the offenses.

Spencer Bedwell obtained the search warrant, giving him and other state actors the authority to enter into and search the Plaintiff's home and other property and giving him permission from the judge to seize the above-referenced items.  Bedwell obtained this authority, knowing that probable cause did not exist to lawfully support a search of the Plaintiff's home and property, nor did probable cause exist to lawfully support a seizure of any of the Plaintiff's property.

On March 17, 2014, Bedwell and other state actors drove to a location near the Plaintiff's house and found the Plaintiff as he was driving a tractor towards his home.  Bedwell and/or other state actors pointed their guns at the Plaintiff and ordered him to get off the tractor and lie down on

the ground.   The Plaintiff complied with the demands of the law enforcement officers.   Bedwell handcuffed the Plaintiff or, in the alternative, caused the Plaintiff to be handcuffed by other state actors. Bedwell placed the Plaintiff under arrest, even though he knew there was no probable cause for the arrest.

Spencer Bedwell and other state actors searched the Plaintiff's home, even though Bedwell knew probable cause to search did not exist.  Bedwell and other state actors seized numerous items of personal property that belonged to the Plaintiff and his family, including guns and ammunition, and removed those items from the Plaintiff's home.  During the search of his home, the Plaintiff feared for the physical safety and mental well-being of his wife and child who resided with him, and he otherwise experienced embarrassment, humiliation and emotional distress.

Based on Bedwell's false statements, a judge entered an order making it a condition of bond that Plaintiff not possess firearms during the pendency of the bond.  Bedwell caused information to be sent to the Illinois State Police, which caused the Illinois State Police to revoke the Plaintiff's

FOID card, making it illegal for the Plaintiff to possess firearms, even after the pendency of the bond.

Spencer Bedwell knew and intended that Plaintiff's arrest would be discussed by the voting public.  Bedwell knew and intended that Plaintiff's arrest on felony charges would make some voters less likely to vote for him for sheriff.

Because the Plaintiff was running for the Office of Sheriff of Schuyler County as an Independent Party Candidate, March 25, 2014 was the first day he could begin circulating nominating petitions for the position. Bedwell knew and intended for the arrest to occur the week before the Plaintiff would first be allowed to circulate nominating petitions.  Bedwell and other co-conspirators who are not parties to this action caused a press release to be issued by the Schuyler County Sheriff's Office to the Rushville Times, notifying the public that Plaintiff had been arrested and charged with felony offenses.  Bedwell and others also caused the police report to be delivered by the Schuyler County Sheriff's Office to the Rushville Times, which is the newspaper widely circulated and read by the voters in Schuyler

County.

On March 26, 2014, in the same newspaper issue that announced Deputy Kevin Murray and Bill Redshaw had earned the Democratic and Republican nominations for sheriff in the primary election on March 18, 2014, the newspaper also reported that Plaintiff had been arrested and charged with felony offenses.  The newspaper article recited many of the aforementioned false statements made by Bedwell as noted above.

Spencer Bedwell intended for the Plaintiff to be forced to hire an attorney to defend himself in a criminal trial.  Bedwell gave false testimony at a preliminary hearing in *People v. Jurl Southerland*, Schuyler County Case No. 2014-CF-7.  Bedwell and Frakes caused the criminal prosecution of the Plaintiff to be continued by the Schuyler County State's Attorney. The officers failed to provide exculpatory evidence when they did not notify the state's attorney that they had made false allegations in their police reports and that Bedwell had done the same in his affidavit for search warrant and that Bedwell had given false testimony at the preliminary hearing.  In pursuing criminal charges against the Plaintiff, the officers

12

misrepresented material evidence and/or caused material evidence to be misrepresented to the state's attorney.

From March 17, 2014 to October 15, 2014, the Plaintiff had no choice but to defend himself against criminal charges. The Plaintiff spent money to hire an attorney to defend his rights in the criminal trial.

C. Jury trial

On October 14, 2014, in the Eighth Judicial Circuit of the State of Illinois, in Schuyler County, a jury was empaneled and sworn and a criminal trial commenced in the matter of *People v. Jurl Southerland*, Schuyler County Case No. 2014-CF-7. The officers gave false testimony at the trial.

On October 15, 2014, the jury returned a verdict of "not guilty" in the matter of *People v. Jurl Southerland*, Schuyler County Case No. 2014-CF-7. Following the verdict, the judge ordered that the items of personal property that had been seized by Bedwell be given to Donella Southerland. Although he had been acquitted, the Plaintiff's FOID card was not automatically reinstated. Accordingly, the judge could not order the items

13

returned to the Plaintiff.

From March 17, 2014 to October 15, 2014, the Plaintiff was aware that if he was convicted of certain charges, he would go to prison.  On November 4, 2014, an unknown and unknowable number of voters were influenced to vote for a candidate other than the Plaintiff because of the conduct of the Defendants.  The Plaintiff lost the election for Sheriff of Schuyler County.

The Plaintiff's FOID card was not reinstated until on or about November 21, 2014.

D. Causes of action

In Count I, the Plaintiff asserts a false arrest claim pursuant to 42 U.S.C. § 1983 against Spencer Bedwell.

In Count II, the Plaintiff asserts the same type of claim against Jesse Frakes.

In Count III, the Plaintiff asserts state law claims for false arrest/imprisonment against Bedwell.

In Count IV, the Plaintiff asserts the same type of claims against

Frakes.

In Count V, the Plaintiff asserts a search and seizure claim pursuant to § 1983 against Bedwell.

In Count VI, the Plaintiff asserts the same type of claim against Frakes.

In Count VII, the Plaintiff asserts a state law claim for malicious prosecution against Bedwell.

In Count VIII, the Plaintiff asserts the same type of claim against Frakes.

In Count IX, the Plaintiff asserts a First Amendment claim pursuant to § 1983 against Bedwell.

In Count X, the Plaintiff asserts the same type of claim against Frakes.

In Count XI, the Plaintiff asserts an Equal Protection (Class of One) claim pursuant to § 1983 against Bedwell.

In Count XII, the Plaintiff asserts the same type of claim against Frakes.

In Count XIII, the Plaintiff asserts a failure to intervene claim

15

pursuant to § 1983 against Bedwell.

In Count XIV, the Plaintiff asserts the same type of claim against Frakes.

In Count XV, the Plaintiff asserts conspiracy claims pursuant to §§ 1983 & 1985 against both officers.

In Count XVI, the Plaintiff asserts state law claims for conspiracy against both officers.

In Count XVII, the Plaintiff asserts state law claims for indemnification pursuant to 745 ILCS 10/9-102 against Schuyler County and the Sheriff's Office.

In Count XVIII, the Plaintiff asserts a respondeat superior claim against Schuyler County and the Sheriff's Office.

## II. DISCUSSION

The Defendants offer several reasons why this case should be dismissed pursuant to Rule 12(b)(6).

### A. Legal standard

In reviewing a motion to dismiss, the Court accepts the truth of the

16

factual allegations of the complaint.  *Vinson v. Vermilion County, Illinois*, 776 F.3d 924, 925 (7th Cir. 2015).  In order to avoid dismissal under Rule 12(b)(6), "the complaint must state a claim that is plausible on its face." *Id*. at 928.  Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks and citation omitted).

B. *Donella Southerland v. Ramon Escapa*, Case No. 3:14-cv-3094

On April 2, 2014, Donella Southerland filed a two-count *pro se* § 1983 complaint in this Court.  *See Donella Southerland v. Ramon Escapa*, Case No. 3:14-cv-3094-SEM-TSH ("*Escapa*").  On March, 31, 2016, following an Opinion and Order of Judge Myerscough dismissing the case, judgment was entered in favor of Defendant Ramon Escapa, the Schuyler County State's Attorney at the time of the events in this case.

In *Escapa*, Donella Southerland challenged the constitutionality of

17

Illinois' Aggravated Unlawful Use of a Weapon statute (720 ILCS 5/24-1.6(a)), claiming that it violated the Second Amendment to the extent that it prevented qualified private citizens from carrying firearms for self-defense.

In Count II of *Escapa*, Donella Southerland alleged that Escapa had violated her Fourth Amendment right to be free from unreasonable searches and seizures by advising the officers as to what they should seize. Because of Escapa's actions, Mrs. Southerland claimed her constitutional rights had been irreparably infringed in that she has lost the value and use of her firearms. She sought the return of any illegally seized firearms.

In an Order entered on March 20, 2015, Judge Myerscough granted Escapa's motion to dismiss as to the Plaintiff's unreasonable search and seizure claim, finding that even if the warrant was not supported by probable cause, the state's attorney was protected by qualified immunity because he could "reasonably have concluded that the warrant validly authorized the seizure of all of the Southerlands' firearms to prevent Mr. Southerland from using them for an illegal purpose." *See* Doc. No. 14, at

18

19.  The Court found that the challenge to the Aggravated Unlawful Use of a Weapon statute survived the initial motion to dismiss.

Subsequently, the Court found the statute to be constitutional and determined, therefore, that Donella Southerland could not state a claim and therefore granted Escapa's motion to dismiss.  *See* Doc. No. 29.  Judgment was entered in favor of Ramon Escapa and against Donella Southerland.

C. Res judicata, collateral estoppel and probable cause

(1)

The Defendants contend the Plaintiff's claims are barred by res judicata, collateral estoppel and because there was probable cause.

Res judicata gives preclusive effect to a prior lawsuit if (1) a court of competent judgment rendered a final judgment on the merits; (2) the new lawsuit involves the same "cause of action" as the old; and (3) there is an identity of parties or their privies between the suits.  *See Arlin-Golf, LLC v. Village of Arlington Heights*, 631 F.3d 818, 821 (7th Cir. 2011).  When each element is met, the prior judgment will preclude even claims that could have been, but were not, litigated in the previous suit.  *See id.*  Different

claims will constitute the same "cause of action" if they "arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park, Inc. v. City of Highland Park*, 184 Ill.2d 290, 311 (1988).

Collateral estoppel requires that "(1) the issue decided in the prior adjudication be identical to the issue presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Talarico v. Dunlap*, 177 Ill.2d 185, 191 (1997).

The Court concludes that *Escapa* does not bar this action pursuant to res judicata or collateral estoppel. As the Plaintiff notes, Donella Southerland's pro se complaint challenged an Illinois statute and asserted that the search of the Southerlands' home and the seizure of the firearms found therein violated her rights under the Fourth and Fourteen Amendments. Mrs. Southerland's challenge to the Aggravated Unlawful Use of a Weapon statute is not related to this action. The second issue in

20

*Escapa* was based on the state's attorney's execution of the search warrant and the advice given to the Officers as they conducted the search.

As the Plaintiff asserts, unlike this case, *Escapa* did not bring any claims which alleged that Bedwell or Frakes fabricated information in order to obtain a search warrant. The Plaintiff claims Donella Southerland may not have known about their fabrications at the time of her complaint. Additionally, Donella Southerland would have lacked standing to bring claims relating to any injury that resulted to her husband because of his arrest.

The Court concludes there is no identity of the cause of action or issues in the previous lawsuit. The issue of whether the Officers fabricated their applications for a warrant was not litigated in the case before Judge Myerscough. Additionally, the Plaintiff's wife did not have standing to litigate claims based on his arrest.

Based on the foregoing, *Escapa* does not preclude the action brought by the Plaintiff.

(2)

21

The Defendants also allege that probable cause existed based on the allegations in the warrant complaint prepared by Spencer Bedwell. Because the Officers had probable cause to search, seize, arrest and prosecute the Plaintiff, the Defendants contend all of the claims must be dismissed.

Based on the legal standard for a motion to dismiss, the Plaintiff contends it is improper for the Court to consider the allegations in the warrant complaint prepared by Spencer Bedwell. The allegations in the Plaintiff's Complaint challenge the allegations in the warrant complaint. In an action which is before the Court on a motion to dismiss, the Court must accept the truth of the Plaintiff's factual allegations which state a plausible claim. *See Vinson*, 776 F.3d at 925.

In his Complaint, the Plaintiff alleges he did not point a gun at Bedwell or Frakes. Moreover, when he was leaving the scene, Bedwell did not inform police dispatch that Plaintiff had pointed a gun at him or committed any crime. There are no allegations in the Complaint which suggest that Plaintiff yelled at the Officers, directed threatening gestures towards them, refused an order to drop his rifle or engaged in any other

22

action which would support the finding of probable cause.

The Plaintiff claims that, while there is a presumption of validity with respect to an affidavit supporting a warrant, *see Franks v. Delaware*, 438 U.S. 154, 171 (1978), that presumption has been challenged by the allegations in the Complaint wherein he asserts that Spencer Bedwell fabricated his warrant complaint in an attempt to retaliate against the Plaintiff.  "[A] warrant request violates the Fourth Amendment if the requesting officer knowingly, intentionally, or with reckless disregard for the truth, makes false statements in requesting the warrant and the false statements were necessary to the determination that a warrant should issue." *Knox v. Smith*, 342 F.3d 651, 658 (7th Cir. 2003).

As the Plaintiff asserts, it would be illogical to allow a party to defeat a claim by attaching the document alleged to be fabricated to a motion to dismiss and have the Court accept the allegations as true.  Otherwise, a police officer could commit an act which gives rise to a claim while at the same time shielding himself from a § 1983 action.

There are disputed facts as to what occurred in the early morning

23

hours of March 17, 2014.  Based on the allegations of the Plaintiff's Complaint and the applicable legal standard, the Court is unable to determine at this stage of the proceedings whether probable cause existed.

For the foregoing reasons, the Court must conclude--at least at this stage–that Plaintiff's claims are not barred by the doctrines of res judicata, collateral estoppel and/or because there was probable cause for the search and arrest.

### D. First Amendment claims

Counts IX and X are § 1983 First Amendment claims, wherein the Plaintiff alleges that the actions of Spencer Bedwell and Jesse Frakes burdened, interfered and/or prevented the Plaintiff from exercising his First Amendment rights to run for office, express his political views, win election to the Office of Sheriff of Schuyler County and represent the interests of and advance the political ideas of a particular set of voters.

To the extent that Plaintiff is asserting a First Amendment right to win an election, the Court agrees with the Defendants that the Plaintiff does not have a viable claim.

24

To state a First Amendment retaliation claim, a plaintiff must plausibly allege that "(1) he engaged in activity protected by the First Amendment, (2) he suffered an adverse action that would likely deter future First Amendment activity, and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to retaliate." *Santana v. Cook County Bd. of Review*, 679 F.3d 614, 622 (7th Cir. 2012) (internal quotation marks and citation omitted).

The act of engaging in a political campaign for sheriff is protected by the First Amendment.  The Plaintiff's statements that he would eliminate corruption and incompetency within the sheriff's office and that, if elected, he would terminate Spencer Bedwell's employment are also protected by the First Amendment.  Accordingly, the Plaintiff has established the first element of a First Amendment retaliation claim.

In order to meet the second element, a plaintiff must show that the alleged adverse action is "sufficient to deter an ordinary person from engaging in that First Amendment activity in the future." *Id.* at 622.  If the allegations of the Complaint are true, then the Officers made false

25

allegations against the Plaintiff so that the state's attorney would obtain an arrest warrant when there was no lawful basis for an arrest warrant. The Court concludes that the threat of an arrest would deter an ordinary person from engaging in First Amendment activity. Upon taking the allegations as true, therefore, the Plaintiff has met the second element.

As for the whether the First Amendment activity was a motivating factor in the Defendants' decision to retaliate, the Plaintiff alleges that another candidate, Kevin Murray, was a co-worker and friend of Spencer Bedwell and Jesse Frakes. The Officers did not want the Plaintiff to be elected as Sheriff of Schuyler County. The Plaintiff essentially asserts that Bedwell and Frakes took this action to ensure that Plaintiff would not win the election and Murray would. In accepting the allegations as true, the Court concludes that Plaintiff has met the third element.

Based on the foregoing, the Court concludes that Plaintiff has asserted plausible claims for First Amendment retaliation. To the extent that Plaintiff is alleging a First Amendment right to win, those claims will be dismissed.

26

E. Equal Protection class of one claims

In Counts XI and XII, the Plaintiff asserts equal protection claims against the Officers. Basically, the Plaintiff alleges he was singled out and treated differently by Bedwell and Frakes due to his candidacy for sheriff and the statements he made during the campaign, in addition to witnessing police misconduct by the Officers.

The Plaintiff acknowledges he cannot meet the elements for an equal protection class of one claim against the Officers. Accordingly, the Plaintiff consents to the dismissal of Counts XI and XII. The portion of the Defendants' Motion directed at those claims is Allowed.

F. Federal and state conspiracy claims

In Counts XV and XVI, the Plaintiff asserts conspiracy claims against Spencer Bedwell and Jesse Frakes. Count XV includes claims pursuant to §§ 1983 and 1985, while Count XVI asserts state law conspiracy claims.

"To establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights . . .;

and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) (internal citations and quotation marks omitted).

Although the Plaintiff does not allege Bedwell or Frakes conspired with a private actor, the Court concludes that private conduct is not necessary to an allegation of a conspiracy to deprive an individual of his constitutional rights. Section 1983 includes no such requirement. *See Travis v. Keiper-Knapp*, No. 09 C 3469, 2011 WL 5395821, at *4 (N.D. Ill. 2011).

The elements of a civil conspiracy under Illinois law are: "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston*, 209 Ill.2d 302, 317 (2004).

The Plaintiff has alleged that the two Officers entered into an agreement to retaliate against the Plaintiff for campaigning for the post of

28

Sheriff of Schuyler County against their friend and co-worker, Kevin Murray, and for discussing corruption and incompetency in the Sheriff's Office during his campaign. Additionally, Bedwell and Frakes pointed a gun at the Plaintiff. Bedwell and Frakes further made false allegations and reported those allegations to the state's attorney so that the state's attorney would seek an arrest warrant for the Plaintiff. As a result, the Plaintiff was arrested.

When these allegations are accepted as true, the Court concludes that Plaintiff has alleged a plausible claim for conspiracy under § 1983 and state law.

To the extent that Plaintiff is alleging a conspiracy under § 1985, those claims will be dismissed because the Plaintiff has not alleged the Defendants were motivated by race or other class-based animus, which is a prerequisite under § 1985(3). *See Kyle v. Morton High School,* 144 F.3d 448, 457 (7th Cir. 1998).

G. Failure to intervene and conspiracy claims

The Defendants contend that Plaintiff's failure to intervene and

29

conspiracy claims alleged in Counts XIII, XIV, XV and XVI fail because he has failed to allege another cognizable constitutional violation.

As stated earlier, however, the Plaintiff has sufficiently asserted a First Amendment claim at this stage of the proceedings. Accordingly, this portion of the Defendants' motion will be denied.

H. Qualified immunity

The Defendants next allege that qualified immunity bars the claims against the Officers. "[Q]ualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Kingsley v. Hendrickson*, 801 F.3d 828, 831 (7th Cir. 2015) (citation omitted). An officer does not violate a clearly established right unless the contours of the right were sufficiently definite to allow a reasonable officer to understand he was violating it; thus, the applicable law has placed the legal question behind debate. *See City and County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015). This allows officers to make reasonable mistaken judgments in "protect[ing] all but the plainly

incompetent or those who knowingly violate the law." *Id.* (citation omitted).   The right must be defined with a sufficient degree of particularity.  *Id.* at 1775-76.

"To succeed on a political-retaliation claim, 'a plaintiff must show a causal connection between a defendant's retaliatory animus and subsequent injury in any sort of retaliation action.'" *Bianchi v. McQueen,* __ F.3d __, 2016 WL 1213270, at *9 (7th Cir. March 29, 2016) (quoting *Hartman v. Moore,* 547 U.S. 250, 259 (2006)).   Even if the plaintiff establishes retaliatory animus, he must also show it was the but-for cause of the arrest. *See id.* at *9 (citing *Thayer v. Chiczewski,* 705 F.3d 257, 252 (7th Cir. 2012)).

The Plaintiff alleges that the conduct of Spencer Bedwell and Jesse Frakes–in making false claims against the Plaintiff in order to obtain his arrest and thereby impair his ability to speak out about matters of public concern during the course of his campaign for the Office of Sheriff--is so egregious that no reasonable person could believe it would not violate the Plaintiff's clearly established constitutional rights.  In other words, Bedwell

31

and Frakes should have reasonably known that they would not have qualified immunity from suit after making false statements in order to obtain the arrest of an innocent man.

The Defendants first allege that the Officers are entitled to qualified immunity because it has been determined there was probable cause to search and seize the Plaintiff's property, and arrest and prosecute him for aggravated assault, aggravated unlawful use of a weapon and reckless conduct. Additionally, the presence of probable cause bars the Plaintiff's First Amendment retaliation claims.

Although the United States Supreme Court has determined that probable cause is a bar to First Amendment retaliatory prosecution claims, the law remains unsettled as to whether it is a bar to First Amendment retaliatory arrest claims. *See Thayer v. Chiczewski,* 705 F.3d 237, 252 (7th Cir. 2012) (citing *Hartman v. Moore,* 547 U.S. 250, 261 (2006)); *Reichle v. Howards,* 132 S. Ct. 2088, 2095-97 (2012). The Supreme Court has never held there is a "right to be free from a retaliatory arrest that is otherwise supported by probable cause." *Reichle,* 132 S. Ct. at 2094.

32

Accordingly, that right is not clearly established. Consequently, the Officers would be entitled to qualified immunity if the arrest was supported by probable cause.

The Court earlier noted that it could not determine at this stage of the proceedings whether probable cause existed so dismissal on that basis is premature. Accordingly, the Court has no basis to conclude that Bedwell and Frakes are entitled to qualified immunity because of the presence of probable cause.

There is not a bar to a § 1983 suit if the "officers responsible for bringing about an unlawful arrest knew that the arrest warrant had issued without probable cause; this is particularly true of the officers who knew that those who obtained the warrant had deceived the authorizing body." *Juriss v. McGowan*, 957 F.2d 345, 350-51 (7th Cir. 1992).

The Complaint states that for an unknown reason, Spencer Bedwell stopped his official vehicle in front of the Plaintiff's residence just after 3:00 a.m. on March 14, 2014. This roused the Plaintiff's dogs, who began barking. The vehicle briefly left the property and then returned. Neither

the Plaintiff nor his wife recognized the car as a police vehicle.   The Plaintiff went outside with a rifle to investigate whether people were prowling around on his property.  The Plaintiff and Bedwell spoke to each other and Bedwell left.  The Plaintiff denied pointing a firearm at either Officer.  Upon leaving the area following the encounter, Bedwell informed police dispatch that Plaintiff was angry and had a gun.  Bedwell did not say that Plaintiff had pointed a gun at him or committed any crime.

At 3:18 a.m. on March 17, 2014, which would have been immediately after leaving the area, Bedwell called and spoke to Deputy Kevin Murray, his co-worker and friend, who was running for sheriff against the Plaintiff.  Bedwell called and spoke to Murray again 25 minutes later.  The Plaintiff states that at some point around the time of these conversations, Spencer Bedwell and Jesse Frakes conspired to falsely claim that Plaintiff had pointed a firearm at one or both of them.

There is a factual dispute as to what occurred in front of the Plaintiff's residence after 3:00 a.m. on March 17, 2014.  If the Plaintiff's version of events is believed, a logical inference is that the Officers lied in order to

create probable cause to arrest the Plaintiff because he was running for sheriff against their friend and co-worker.  Because this is a plausible claim based on the factual allegations of the Complaint and given that qualified immunity does not protect those who knowingly violate the law, the Court declines to dismiss the claims against the Officers on that basis.

I. State law false arrest/imprisonment and conspiracy claims

The Defendants allege that the state law false arrest and false imprisonment claims asserted in Counts III and IV against the Officers, in addition to the state law conspiracy claim asserted in Count XVI, are barred by the one year statute of limitations proscribed under the Illinois Tort Immunity Act.

"The essential elements of a cause of action for false arrest or false imprisonment are that the plaintiff was restrained or arrested by the defendant and that the defendant acted without having reasonable grounds to believe that an offense was committed by the plaintiff."  *Meerbrey v. Marshall Field and Co.*, 139 Ill.2d 455, 474 (1990).  State law claims against police officers must be brought within one year of the date of

accrual.  745 ILCS 10/8-101.  The Plaintiff was arrested on March 17, 2014, and the Complaint in this case was filed more than one year later–on April 15, 2015.

"[T]he statute of limitations for a false imprisonment claim begins to accrue when a person is first falsely imprisoned since the person presumably knows he was falsely imprisoned." *Padilla v. City of Chicago*, 2011 WL 3793413, at *7 (N.D. Ill. 2011).  Accordingly, the Plaintiff knew, or reasonably should have known, of the facts that formed the basis of both his false arrest and false imprisonment claims at the time he was arrested. *Pierce v. Pawelski*, 2000 WL 1847778, at *2 (N.D. Ill. 2000).

Because the Complaint was filed more than one year after he was arrested, the Plaintiff's state law false arrest and false imprisonment claims are barred by the one-year statute of limitations.  Accordingly, Counts III and IV will be dismissed.

In Illinois, civil conspiracy is not considered an independent tort; therefore, if a plaintiff "fails to state an independent cause of action underlying his conspiracy allegations, the claim for conspiracy also fails."

36

*Thomas v. Fuerst*, 345 Ill. App.3d 929, 936 (1st Dist. 2004).

The Defendants contend that Plaintiff's civil conspiracy claims are also barred by the statute of limitations. Because the Plaintiff's false arrest and false imprisonment claims are untimely, any conspiracy allegations which relate to false arrest or false imprisonment must also fail.

The Court notes, however, that Counts VII and VIII include state law malicious prosecution claims. In his response, the Plaintiff alleges that on May 21, 2014, Spencer Bedwell gave false testimony at the preliminary hearing in the Plaintiff's criminal case and, further, that Bedwell and Jesse Frakes continued or caused the criminal prosecution and failed to provide the Plaintiff with exculpatory evidence during the criminal proceeding. Because those allegations–which are within one year of the filing of the Complaint--form the basis of a continuing violation and could support a malicious prosecution claim, the Court concludes that any state law conspiracy claim relating to those allegations is not barred by the statute of limitations.

Accordingly, the Motion to Dismiss Counts III and IV will be

Allowed.  To the extent that Plaintiff in Count XVI is alleging state law conspiracy claims for false arrest and false imprisonment, those claims will be dismissed.  However, the Court declines to dismiss any state law conspiracy claims relating to the Plaintiff's malicious prosecution claim.

J. Immunity under the Tort Immunity Act

The Defendants allege that, even if the Plaintiff's claims are not otherwise dismissed, the claims are barred by the Illinois Tort Immunity Act which, the Defendants allege, shield the Officers from state court liability arising out of misrepresentations, false information, enforcement of law, discretionary acts and the institution of judicial proceedings.

The Illinois Tort Immunity Act does not bar the Plaintiff's claims as alleged.  Section 2-202 does not protect a public employee when he engages in "willful and wanton conduct."  Section 2-208 does not grant immunity if the public employee "acts maliciously and without probable cause."

Based on the allegations of the Plaintiff's Complaint, the Court concludes that the Officers are not immune from the Plaintiff's state law claims pursuant to the Tort Immunity Act.  The motion to dismiss on that

basis is Denied.

### K. Indemnification claims against the County and Sheriff's Office

The Defendants assert that Plaintiff's indemnification claims must be dismissed. In Count XVII, the Plaintiff seeks indemnification against Schuyler County and the Sheriff's Office under 745 ILCS 10/9-102. The Defendants contend that if the constitutional violation fails, the corresponding claim for statutory indemnification must also fail. Because the Court has found that Plaintiff has sufficiently alleged a First Amendment retaliation claim, the Plaintiff's state law indemnification claim is not barred. Accordingly, the Court declines to dismiss Count XVII.

In Count XVIII, the Plaintiff seeks indemnification against Schuyler County and the Sheriff's Office based on respondeat superior. The Defendants correctly note that respondeat superior does not provide a basis for municipal liability under § 1983. *See Gossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir. 1997).

The Defendants also allege that, to the extent that Count XVIII is premised on the Plaintiff's state law claims, it must be dismissed because

those claims fail.  Because some of the Plaintiff's state law claims are not being dismissed, the Court declines to dismiss Count XVIII to the extent it relates to the state law claims.

Ergo, the Defendants' Motion to Dismiss is ALLOWED in Part and DENIED in Part.

The Motion is DENIED to the extent that dismissal is sought based on res judicata, collateral estoppel and probable cause.

The Motion as to the First Amendment retaliation claims in Counts IX and X is DENIED.

The Motion to Dismiss Counts XI and XII is ALLOWED.

The Motion as to the failure to intervene claims as set forth in Counts XIII and XIV and the conspiracy claims asserted in Counts XV and XVI is DENIED.

The Motion to Dismiss pursuant to qualified immunity is DENIED.

The Motion to Dismiss the state law false arrest and false imprisonment claims in Counts III and IV is ALLOWED.  Any conspiracy claims based on false arrest and false imprisonment are also DISMISSED.

The Motion to Dismiss Count XVI to the extent that it is directed at a conspiracy claim for malicious prosecution is DENIED.

The Motion to Dismiss pursuant to the Tort Immunity Act is DENIED.

The Defendant's Motion to Dismiss the indemnification claims against Schuyler County and the Sheriff's Office that are asserted in Count XVII is DENIED.

The Defendant's Motion to Dismiss the indemnification claims that are premised on state law claims in Count XVIII is DENIED.

Accordingly, Counts III and IV and XI and XII are dismissed.

The remaining counts may proceed–at least in part–as provided in this Order.

This case is referred to United States Magistrate Judge Tom Schanzle-Haskins for the purpose of issuing a scheduling order.

ENTER: May 23, 2016

FOR THE COURT:

_s/Richard Mills_
Richard Mills
United States District Judge